928 So.2d 576 (2006)
Rose Marie FAGAN
v.
Michelle LEBLANC, D.D.S., Sue Leblanc, D.D.S.
No. 2005 CA 1845.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
*578 Thomas J. Hogan, Jr., Hammond, for Plaintiff-Appellant Rose Marie Fagan.
John A. Stewart, New Orleans, for Defendant-Appellee Michelle Leblanc, D.D.S.
J. Michael Daly, Jr., New Orleans, for Defendant-Appellee Sue Leblanc, D.D.S.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
In this case, Rose Marie Fagan challenges the trial court's judgment granting summary judgment in favor of Dr. Sue LeBlanc and dismissing her claim for damages.

FACTS AND PROCEDURAL HISTORY
Mrs. Fagan began treating with Dr. Sue in 1988 and was diagnosed with Type III periodontal disease. According to the record, Mrs. Fagan refused to seek further treatment from a periodontal disease specialist as recommended by Dr. Sue. Mrs. Fagan's condition had not improved by the time she was seen by Dr. Michelle LeBlanc (Dr. Sue's daughter) on January 28, 1998. Although Dr. Michelle recommended a comprehensive treatment plan for Mrs. Fagan at that time, Mrs. Fagan opted for emergency care only and was treated by Dr. Michelle on a limited basis over the next several months.
In August 1998, Mrs. Fagan agreed to a comprehensive treatment plan, which Dr. Michelle performed over the next nine months. This treatment included the removal of all remaining teeth, with the exception of two teeth in the upper jaw and two in the lower jaw to be used as anchors for dentures. The final "zest" attachments were placed in Mrs. Fagan's remaining teeth and in her dentures in April 1999. However, over the next several months, Mrs. Fagan apparently failed to practice good oral hygiene, causing her four remaining teeth to deteriorate and become severely decayed. By October 2000, Mrs. Fagan was advised that her "zest" attachments had "extensive recurrent decay . . . that only fluoride and good oral hygiene could prevent." It was at that time that Mrs. Fagan requested a referral to an oral surgeon for implants.
According to the record, Mrs. Fagan's attorney referred her to Dr. Cecil Fruge, a general dentist. Dr. Fruge saw Mrs. Fagan on March 9, 2001, at which time Mrs. Fagan complained that her dentures were loose. Noting severe decay in Mrs. Fagan's four remaining teeth, Dr. Fruge opined that the teeth were not salvageable. *579 Dr. Fruge agreed that good oral hygiene would have prevented the decay he saw in Mrs. Fagan's teeth. When asked about Mrs. Fagan's dentures, Dr. Fruge acknowledged that the dentures were made adequately and the placement of the posts in Mrs. Fagan's teeth looked adequate.
Dr. Fruge referred Mrs. Fagan to Dr. Michael Maginnis, a general dentist with a specialty in prosthodontics. Dr. Maginnis saw Mrs. Fagan on April 16, 2001, and concluded that the decay in her four remaining teeth were causing the dentures to fit improperly because they were not providing the support needed for the dentures. Dr. Maginnis indicated that Mrs. Fagan's four remaining teeth needed to be extracted and that she would need to be fitted for new dentures with implants at a cost of approximately $10,000.00. Dr. Maginnis opined that the procedure of using Mrs. Fagan's four remaining teeth as anchors for the "zest" attachments was a "very acceptable technique."
Alleging that her treatment by Drs. Sue and Michelle was substandard and that they failed to inform her of the risks associated with the treatment, Mrs. Fagan filed a complaint with the Patient Compensation Fund. On May 21, 2003, a medical review panel unanimously opined that the evidence did not support a finding that either Dr. Sue or Dr. Michelle had violated the standard of care for their specialty. The panel further found that educational brochures and clinical notes amply explained and supported the fact that Mrs. Fagan was advised of the risks and benefits of the procedure so that a reasonable person having that information would have made an informed decision.
Despite the panel's finding, Mrs. Fagan filed a petition for damages on June 26, 2003, naming Drs. Sue and Michelle as defendants.[1] Mrs. Fagan alleged negligence and/or breaches of duty by the defendants in the following non-exclusive ways: (1) failure to disclose the risks and hazards involved in the procedures performed by defendants; (2) failure to obtain plaintiff's informed consent prior to performing the procedures; and (3) failure to act within the degree of care and skill possessed by practitioners in the community.
In response to Mrs. Fagan's petition for damages, Dr. Sue filed an answer generally denying the allegations contained therein and an exception raising the objection of no cause of action. Thereafter, on March 8, 2004, Dr. Sue filed a motion for summary judgment alleging that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law. Dr. Sue argued that without expert testimony, Mrs. Fagan could not carry the burden of proof in her medical malpractice claim. As support for her motion, Dr. Sue relied on the opinion of the medical review panel and the panel's written reasons for same.[2] Mrs. Fagan *580 filed an opposition to Dr. Sue's motion for summary judgment, alleging that Drs. Sue and Michelle breached the applicable standard of care by performing a medical procedure on her without obtaining her informed consent for same. Attached to Mrs. Fagan's opposition was a document entitled "Possible Complications of Common Surgical Procedures," which outlines risks, as defined by the Louisiana Medical Disclosure Panel, that are required to be disclosed by physicians to patients.
Dr. Sue's motion for summary judgment proceeded to hearing on April 12, 2004. After hearing arguments from the parties, the court took the matter under advisement and, according to the minutes, gave "counsel [for Dr. Sue] (15) days to file response."[3] Thereafter, on April 30, 2004, the court granted Dr. Sue's motion for summary judgment, dismissing Mrs. Fagan's claim for damages. However, although the court correctly referenced Dr. Sue as "Dr. Sue LeBlanc" in its reasons for judgment, the court erroneously named "Sue C. Clark, D.D.S." in the April 30, 2004 judgment.
On May 12, 2004, Mrs. Fagan filed a motion for new trial on the summary judgment granted in favor of Sue C. Clark, D.D.S., arguing, among other things, that the judgment was wrong as a matter of law as it was rendered in favor of a person that was not a party to the litigation. Mrs. Fagan noted that perhaps the court intended that the judgment be in favor of Dr. Sue C. LeBlanc, as she was a party to the litigation and had filed the motion for summary judgment. Subsequently, Dr. Sue filed a motion to amend the judgment, asking the court to amend the judgment pursuant to La.Code Civ. P. art.1951 to reflect her proper name.
According to the record, the motion for new trial and the motion to amend were set for hearing on August 2, 2004, at which time, by consent of the parties, the hearing on both motions was continued to October 25, 2004. Thereafter, on August 19, 2004, the trial court filed an amended judgment in favor of Dr. Sue, granting her motion for summary judgment and dismissing Mrs. Fagan's claim for damages. On September 3, 2004, Mrs. Fagan filed a motion for appeal from the August 19, 2004 judgment. When the motion for new trial and motion to amend came before the court for hearing on October 25, 2004, the record reflects that a bench conference was held, *581 after which time Mrs. Fagan's counsel noted that "due to the fact that there have been two judgments filed and signed by [the trial court] and a motion for an appeal has been filed the motion for new trial is moot."
It is from the August 19, 2004 judgment that Mrs. Fagan has filed the instant appeal. Mrs. Fagan maintains that trial court's judgment was wrong as a matter of law and requests that this court reverse the judgment below and remand the case for a trial on the merits. Mrs. Fagan argues the court erred (1) in granting summary judgment in favor of Dr. Sue and (2) in signing the August 19, 2004 amended judgment in favor of Dr. Sue, a judgment that Mrs. Fagan asserts is an absolute nullity.[4]

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Coop., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. Exxonmobile, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La. App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 830. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the *582 substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
The elements a plaintiff in a medical malpractice action is required to establish are statutorily defined as follows: (1) "The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances;" (2) "That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill;" and (3) "That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred." La. R.S. 9:2794(A). Summarizing, the plaintiff must establish the standard of care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor's alleged negligence and the plaintiff's injuries resulting therefrom. Pfiffner v. Correa, 94-0924, p. 8 (La.10/17/94), 643 So.2d 1228, 1233.
To meet this burden of proof, the plaintiff generally is required to produce expert medical testimony. Lefort v. Venable, 93-2545, p. 4 (La.App. 1 Cir. 6/28/96), 676 So.2d 218, 220. Although the jurisprudence has recognized exceptions in instances of obvious negligence, these exceptions are limited to "instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can." Pfiffner, 94-0924 at 9, 643 So.2d at 1234; see also Coleman v. Deno, XXXX-XXXX, p. 20 (La.1/25/02), 813 So.2d 303, 317. The jurisprudence has thus recognized that "an expert witness is generally necessary as a matter of law to prove a medical malpractice claim." Williams v. Metro Home Health Care Agency, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir. 5/8/02), 817 So.2d 1224, 1228. Moreover, the jurisprudence has held that this requirement of producing expert medical testimony is especially apt when the defendants have filed summary judgment motions and supported such motions with expert opinion evidence that their treatment met the applicable standard of care. Lee v. Wall, 31,468, p. 4, (La.App. 2 Cir. 1/20/99), 726 So.2d 1044, 1046-47.
As previously indicated, the medical review panel concluded that Drs. Sue and Michelle complied with the applicable standard of care, informed Mrs. Fagan of the risks associated with her treatment, and obtained her consent for the treatment rendered to her. Accordingly, by presenting this evidence, Dr. Sue successfully shifted the burden to Mrs. Fagan. In order to defeat the motion for summary judgment filed by Dr. Sue, Mrs. Fagan was required to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial, i.e., that Dr. Sue breached the applicable standard of care. The only evidence submitted by Mrs. Fagan in opposition to Dr. Sue's motion for summary judgment was a document entitled "Possible Complications of Common Surgical Procedures," which outlines risks, as defined by the Louisiana Medical Disclosure Panel, that are required to be disclosed by physicians to patients.
In granting summary judgment in favor of Dr. Sue, the trial court considered the law and evidence in the record and made the following conclusions regarding same:

*583 It is obvious that Plaintiff would have to produce expert testimony in support of her claim that Mover's treatment fell below the applicable standard of care: . . . Plaintiff does not seriously contest this aspect of the case, but, in argument, relies more heavily upon her contention of lack of informed consent.
As per R.S. 40:1299.40, the disclosure requirements for dental treatment rendered by dentist not performing oral or maxillofacial surgery in a hospital is governed exclusively by the provisions of R.S. 40:1299.131.[T]hat statute provides that "informed consent" involves advising the patient of a listed category of possible side effect[s] to the procedure, the only one of which argued herein is "disfiguring scars", allowing the patient the opportunity to ask questions with regard to the proposed procedure and possible side effects, and the dentist's reasonable responses to these inquiries.
This statute further provides that a patient legally challenging proper informed consent has the burden of proving that the dentist failed to disclose the risk of the same listed possible side effects (including disfiguring scars), that the undisclosed risk did occur, and that a reasonably prudent person in the patient's position would not have undergone the procedure had he been properly informed. The decision in [Britt v. Taylor, 37,378 (La.App. 2 Cir. 8/20/03), 852 So.2d 1128] held that a patient must define the existence and nature of the risk as well as the likelihood of its occurrence, which requires "some" expert testimony, and a causal connection between the failure to disclose the material risk and the damage to the patient.
A fair reading of Plaintiff's petition indicates that her primary concern seems to be her concern that she underwent a procedure at some cost, which did not rectify her dental problems, resulting in the need for additional, expensive dental procedures. Without expert testimony, it would be impossible to conclude whether the initial procedure was advisable from a dental standpoint, or whether the proposed second procedure was necessitated by any failure to meet the standard of care in performing the initial procedure. As to lack of informed consent, there is no expert testimony to causally connect any failure to disclose with any damages resulting to Plaintiff. In this regard, the Court notes that there was no evidence in the form of affidavits, deposition testimony, or otherwise to substantiate Plaintiff's claim that she suffered disfiguring scars resulting from the dental procedure, or that Mover herein even performed any surgical, dental procedures which caused the alleged scarring.
On appeal, Mrs. Fagan argues that contrary to the trial court's conclusions, "there was `some' expert testimony in the record concerning the existence and nature of the risk in the form of the regulations adopted by the Medical Disclosure Panel." She maintains that she "had sufficient `expert testimony' in the form of the risks enumerated by the Louisiana Medical Disclosure Panel to establish the existence of the risk complained of and the likelihood of its occurrence to survive summary judgment." Having thoroughly reviewed the record before us, we disagree with Mrs. Fagan's arguments. There is absolutely no evidence in the record that Dr. Sue breached the applicable standard of care she owed to Mrs. Fagan. Moreover, the evidence reveals that Dr. Sue adequately explained the nature of the risk associated with the treatment and the likelihood of its occurrence and that Mrs. Fagan made an informed decision to undergo the treatment. Thus, there was no genuine *584 issue of material fact remaining as to Dr. Sue's liability. Summary judgment in her favor was warranted.

AMENDMENT OF ORIGINAL JUDGMENT
With regard to the August 19, 2004 judgment signed by the trial court, Mrs. Fagan argues on appeal that because the court had no authority to sign a second judgment, the judgment is an absolute nullity and must be stricken from the record. Mrs. Fagan goes even further and asserts that the original judgment in favor of Sue Clark, D.D.S. should be reinstated. Based on the unique facts and circumstances of this case, we find this argument to be incredulous. While we acknowledge the procedural quagmire that this case presents, it would be a grave injustice to permit the original judgment to stand as written.
Pursuant to La.Code Civ. P. art. 1951, "A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party: (1) To alter the phraseology of the judgment, but not the substance; or (2) To correct errors of calculation." Thus, a judgment may be amended by the court only when the amendment takes nothing from or adds nothing to the original judgment. Tunstall v. Stierwald, XXXX-XXXX, p. 4 (La.2/26/02), 809 So.2d 916, 920. Changing the name of a party cast in judgment is a substantive change. Harvey v. Traylor, 96-1321, p. 5 (La.App. 4 Cir. 2/5/97), 688 So.2d 1324, 1329, writ denied, 97-0587 (La.4/18/97), 692 So.2d 454. A final judgment may be substantively amended by the trial court only upon the filing and granting of a motion for new trial. Thibodeaux v. Paradigm Ins. Co., 96-0375, p. 4 (La.App. 1 Cir. 2/20/98), 709 So.2d 830, 832, writ denied, 98-1114 (La.6/5/98), 720 So.2d 685.
In the instant case, the parties recognized the error in the judgment and took action to have the judgment corrected. Mrs. Fagan moved for a new trial and Dr. Sue filed a motion to amend.[5] However, before the motions were ever argued, the trial court signed the amended judgment making the necessary correction. Moreover, at argument before this court, counsel for all parties acknowledged the error and conceded that it was obviously the trial court's intent to render judgment in favor of Sue LeBlanc, not "Sue C. Clark, D.D.S." Although the error in the judgment at issue may have appeared obvious to the parties and the court (as it does to this court as well), procedurally, the judgment should not have been amended until after the trial court granted Mrs. Fagan's motion for a new trial and held a contradictory hearing. La.Code Civ. P. arts. 1971-1977; State ex rel. Dept. of Soc. Serv. V. A.P., 2002-2372, p. 8 (La.App. 1 Cir. 6/20/03), 858 So.2d 498, 503.
While the usual remedy of an appellate court in such a case is to vacate the amended judgment and reinstate the original judgment, this case will not be resolved in such a manner. To reinstate the original judgment as rendered would be to allow a judgment to stand in favor of a non-party, i.e., "Sue C. Clark, D.D.S." Tunstall, XXXX-XXXX at 6, 809 So.2d at 920. *585 Pursuant to La.Code Civ. P. art. 2164, an appellate court may "render any judgment which is just, legal and proper upon the record on appeal." The record before us is complete and we deem it just, legal and proper not only to vacate the amended judgment and reinstate the original judgment, but also to revise the original judgment to reflect that Sue LeBlanc, D.D.S. is the proper party defendant.

CONCLUSION
For the above and foregoing reasons, we find no error in the trial court's ruling granting summary judgment and dismissing Mrs. Fagan's suit. However, the trial court erred in signing the amended judgment without first granting Mrs. Fagan's motion for new trial and holding a contradictory hearing. Thus, we vacate the August 19, 2004 judgment. The judgment of April 30, 2004 is reinstated, amended, and affirmed as follows: "This matter was before the Court on motion for summary judgment filed by Defendant, Sue LeBlanc, D.D.S.... IT IS ORDERED, ADJUDGED AND DECREED, that the motion for summary judgment be granted, and, accordingly, that there be judgment rendered herein in favor of Defendant, Sue LeBlanc, D.D.S., and against Plaintiff, Rose Marie Fagan, dismissing Plaintiff's demands as to this Defendant, at Plaintiff's costs." All costs associated with this appeal are assessed against Mrs. Fagan.
JUDGMENT OF AUGUST 19, 2004, VACATED; JUDGMENT OF APRIL 30, 2004, REINSTATED, AMENDED, AND AS AMENDED, AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[1] Mrs. Fagan has separately appealed the trial court's judgment granting summary judgment in favor of Dr. Michelle LeBlanc. See our published decision in Fagan v. LeBlanc, 2004-2743, 928 So.2d 571 (La.App. 1 Cir.) ("Fagan II"), also decided this same date.
[2] We acknowledge that the copy of the opinion of the medical review panel attached to Dr. Sue's motion for summary judgment was an uncertified copy and not properly supported by either the deposition or affidavit of any of the medical doctors who served on the panel. Thus, it did not fall within any of the categories set forth in La.Code Civ. P. arts. 966 and 967 as evidence properly considered on a motion for summary judgment. Simmons v. Berry, 98-0660, pp. 7-8 (La.App. 1 Cir. 12/22/00), 779 So.2d 910, 916. Nonetheless, we are mindful of our inherent authority and mandate to render "any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ. P. art. 2164. The record in the instant case, which is, for the most part, identical to the record lodged with this court in Fagan II, includes a copy of the motion for summary judgment filed by Dr. Michelle in Fagan II along with the exhibits submitted by Dr. Michelle in support of her motion, all of which were in proper evidentiary form and reviewed by this court in considering Dr. Michelle's motion for summary judgment. Included in Dr. Michelle's exhibits was a copy of the panel's opinion, which was authenticated by its attachment to the affidavit of Dr. Edwin L. Kopfler, a member of the medical review panel that considered Mrs. Fagan's complaint of malpractice against Drs. Sue and Michelle. Moreover, on June 14, 2004, Dr. Sue filed a motion to supplement the record with the trial court, which was subsequently granted, asking that she be allowed to file affidavits from members of the medical review panel attesting to the accuracy of the opinion of the medical review panel and reiterating that the panel concluded there was no breach of the applicable standard of care by Dr. Sue. Accordingly, we will exercise our authority under Article 2164 and, in the interest of justice, consider the opinion of the medical review panel in our review of the summary judgment rendered in favor of Dr. Sue.
[3] We note that the instant record contains no such "response." Moreover, although Mrs. Fagan assigns error to the trial court's decision to allow Dr. Sue to "supplement her motion for summary judgment," Mrs. Fagan failed to brief this assignment of error. Thus, we consider said argument abandoned and will not address the issue herein. See Uniform Rules  Courts of Appeal, Rule 2-12.4.
[4] Mrs. Fagan filed identical briefs in this appeal and in Fagan II, assigning four specifications of error. As previously noted, Mrs. Fagan assigned error to the trial court's decision to allow Dr. Sue to "supplement her motion for summary judgment" but abandoned her argument regarding this issue when she failed to brief the assignment of error. See Uniform Rules  Courts of Appeal, Rule 2-12.4. The fourth assignment of error raised by Mrs. Fagan pertains to the summary judgment rendered in favor of Dr. Michelle, which was addressed by this court in Fagan II.
[5] Although Mrs. Fagan's motion for new trial acknowledged that the judgment was in error, she did not technically consent to a substantive amendment of the judgment naming Dr. Sue LeBlanc. See Villaume v. Villaume, 363 So.2d 448, 451 (La.1978) (recognizing no need for a timely application for a new trial or a timely appeal to effect a substantive change in the judgment where both parties consented to the substantive amendment of the original judgment).