STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0299

**BOONE SERVICES, LLC (FORMERLY BOONE SERVICES, INC.)**

**VERSUS**

**CLARK HOMES, INC.**

Judgment Rendered: **OCT 1 8 2023**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court Docket Number C696631, Sec. 24

Hon. Donald R. Johnson, Judge Presiding

* * * * * * *

| | |
|---|---|
| Teresa D. Cop<br>Craig L. Kaster<br>Zachary, Louisiana | Counsel for Plaintiff/Appellant,<br>Boone Services, LLC |
| | |
| Peter T. Dudley<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee,<br>Clark Homes, Inc. |

* * * * * * *

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

**PENZATO, J.**

Plaintiff/appellant, Boone Services, LLC, appeals a judgment rendered by the trial court on July 18, 2022 following a bench trial. The judgment awarded Boone $21,005.84 but also awarded $90,000.00 to defendant/appellee, Clark Homes, Inc., as liquidated damages, to be applied as an offset or compensation against the amount owed to Boone.

We amend the trial court's judgment, which erroneously identified Boone Services, Inc. as the plaintiff and rendered judgment in favor of and against Boone Services, Inc., to identify Boone Services, LLC as the plaintiff. For the following reasons, the judgment, as amended, is affirmed in part, reversed in part, and amended in part, and we render judgment accordingly.

### FACTS AND PROCEDURAL HISTORY

This dispute arises out of a December 19, 2012 contract between Clark Homes, owner of the project (Twin Lakes Estates Subdivision), and Boone, contractor. Boone filed suit against Clark Homes on June 3, 2020, alleging that it was owed $169,485.01 for work performed during phase 1 of the project pursuant to the December 2012 contract.[1] Boone sought payment of this amount, plus 12% contractual interest. Clark Homes answered Boone's suit, denying any sums were owed to Boone. Clark Homes further asserted that it was entitled to $300.00 per day in liquidated damages, as provided in the contract, due to Boone's failure to complete the work within the time specified in the contract. Thus, Clark Homes asserted, as an affirmative defense, that it was entitled to an offset from any amount found to be owed to Boone.

---

[1] The Twin Lakes Estates Subdivision project was divided into two filings or phases. Boone asserted claims arising out of both phases, which were disposed of in the judgment on appeal. Boone does not assign error to the trial court's judgment concerning the second phase. Thus, we address only Boone's claims concerning the first phase.

2

A bench trial was held on May 10 and 13, 2022. The trial court took the matter under advisement and instructed the parties to file proposed factual findings and conclusions of law as well as a proposed judgment. In a written judgment, signed on July 18, 2022, the trial court overruled Boone's evidentiary objection, asserted at trial, to the admissibility of evidence offered by Clark Homes to support its affirmative defense of compensation or offset for liquidated damages. The trial court rendered judgment in favor of Boone and against Clark Homes in the amount of $21,005.84 and rendered judgment in favor of Clark Homes and against Boone in the amount of $90,000.00 in liquidated damages, to be applied as an offset against the amount owed to Boone. The trial court also issued written reasons for ruling, discussed more fully below. This suspensive appeal by Boone followed.

## AMENDMENT OF THE JUDGMENT

As an initial matter, we note that the trial court's judgment, particularly the decretal language, erroneously identifies Boone Services, Inc. as the plaintiff and renders judgment in favor of and against Boone Services, Inc. However, the petition identifies the plaintiff as "Boone Services, LLC (formerly Boone Services, Inc.)." Although the contract identifies "Boone Services, Inc." as the contractor, Tracey Boone signed the contract as CEO of Boone Services, LLC. The parties do not dispute that Boone Services, LLC was the contractor and is the proper party plaintiff. The identity of the plaintiff organization was not an issue raised at trial. Notably, the introduction of the judgment identifies Boone Services, LLC as the plaintiff, who participated at trial. It is evident that any reference to Boone Services, Inc. in the judgment was made in error.

Pursuant to La. Code Civ. P. art. 2164, an appellate court shall "render any judgment which is just, legal and proper upon the record on appeal." The record before us is complete, and we deem it just, legal, and proper to amend the trial court's July 18, 2022 judgment to identify Boone Services, LLC as the proper party plaintiff.

3

*See Fagan v. LeBlanc*, 2005-1845 (La. App. 1st Cir. 2/10/06), 928 So.2d 576, 584-585, wherein this court amended the trial court's original judgment to identify "Sue LeBlanc, D.D.S." as the proper party defendant.[2] In *Fagan*, the original judgment erroneously identified the defendant as "Sue C. Clark, D.D.S." This court found it just, legal, and proper upon the record on appeal to revise the judgment pursuant to La. C.C.P. art. 2164. *Fagan*, 928 So.2d at 585. Similarly, *see Lewis v. Temple Inland*, 2011-0729 (La. App. 1st Cir. 11/9/11), 80 So.3d 52, 65, wherein judgment was entered against two non-parties, and this court amended the judgment to add the proper defendant as the party cast in judgment. Pursuant to La. C.C.P. art. 2002, if a judgment is rendered against a defendant who has not been served and has not entered a general appearance, like Boone Services, Inc., that judgment is an absolute nullity. When the appellate court notices an absolute nullity, the court is likewise empowered to vacate or correct the judgment on its own motion. La. C.C.P. art. 2164; *Lewis*, 80 So.3d at 65 n.9. Therefore, we amend the trial court's July 18, 2022 judgment to identify Boone Services, LLC, rather than Boone Services, Inc., as the proper party plaintiff.

## DISCUSSION

In six of seven assignments of error, Boone asserts that the trial court failed to properly interpret the parties' contract and, in doing so, erred by failing to award damages to Boone in the full amount of its demand and erred by applying an offset in favor of Clark Homes.[3] To the extent we must interpret the parties' contract, we

---

[2] In *Fagan*, the trial court signed an amended judgment to correct the error. However, because the amended judgment was contrary to La. C.C.P. art. 1951, this court vacated the amended judgment and reinstated the original judgment before revising the original judgment to identify the proper party defendant. *Fagan*, 928 So.2d at 580, 584-585.

[3] During opening remarks, Boone asserted that its claim on the first phase was $168,237.68 ($1,247.33 less than the demand asserted in the petition).

4

apply the *de novo* standard of review.[4] *See Lonesome Development, LLC v. Town of Abita Springs*, 2021-1463 (La. App. 1st Cir. 6/29/22), 343 So.3d 831, 839, *writ denied*, 2022-01158 (La. 11/1/22), 349 So.3d 3 (An appellate court applies the *de novo* standard of review to contract interpretation.) Conversely, where no contract provision applies or where factual findings are pertinent to the interpretation of the contract, we apply the manifest error standard of review. *See Lonesome Development, LLC*, 343 So.3d at 839.

In the remaining assignment of error, Boone challenges the trial court's evidentiary ruling, which we review using the highly deferential abuse of discretion standard. *Landry v. City of Mandeville*, 2021-1362 (La. App. 1st Cir. 4/27/22), 342 So.3d 337, 346, *writ denied*, 2022-00828 (La. 9/27/22), 347 So.3d 155. An abuse of discretion generally results from a conclusion reached capriciously or in an arbitrary manner, which means the absence of a rational basis for the action taken. Thus, a trial court's discretionary action will not be disturbed on review if reasonable people could differ as to the propriety of the trial court's action. *Landry*, 342 So.3d at 346-47.

We address this evidentiary assignment of error first since a finding of error may affect the applicable standard of review. *See Wright v. Bennett*, 2004-1944 (La. App. 1st Cir. 9/28/05), 924 So.2d 178, 182.

### *Evidence and Liquidated Damages*[5]

In related assignments in error, Boone contends that the trial court erred by admitting evidence offered by Clark Homes to support its entitlement to liquidated damages, erred by failing to find that Clark Homes waived its right to liquidated

---

[4] In each assignment of error, Boone cites a contract provision, which it asserts is applicable to the issue raised. After reviewing the contract, the evidence admitted at trial, and each issue presented, we find some of the contract provisions cited by Boone are inapplicable. However, where a contract provision applies or is otherwise pertinent to the issue raised, it is discussed in this opinion.

[5] These issues are raised in Boone's first (waiver), fourth (additional contract days), and fifth (evidence) assignments of error.

5

damages by making the final payment under the contract, and erred by finding that Boone was not entitled to additional contract days, which would have reduced or eliminated delay damages. Concerning contract days, Boone asserts that it was entitled to additional time for weather delays. Boone also contends that the trial court used an incorrect start date and completion date when computing the amount of time it took Boone to complete the work.

Evidence

During trial, Boone objected as opposing counsel questioned Jim Clark (owner/president of Clark Homes) concerning Clark Homes's claim for $90,000.00 in liquidated damages. Boone asserted that "[t]his claim has never been brought." The trial court allowed Boone to lodge an objection "on the area of testimony involving an assertion of delay damages" and stated that it would rule on the testimony's admissibility after trial. As noted, the trial court subsequently overruled the objection in the July 18, 2022 judgment. The court's written reasons do not address this ruling.

Although Clark Homes did not assert a reconventional demand for liquidated damages, it properly raised the affirmative defense of compensation prior to trial. *See* La. C.C. art. 1893. In its answer, Clark Homes raised the affirmative defense of compensation and specifically pled that, upon information and belief, Boone

> failed to complete the contract work in the time specified and the contract provides for liquidated damages of $300.00 per day for each day beyond the specified completion date; therefore, Clark Homes, Inc. is entitled to an offset from any amount found to be owed for the liquidated damages provided by the contract.

In the pretrial order, Clark Homes asserted that it was entitled to an award of liquidated damages against Boone for its failure to timely complete the work.

Additionally, Boone submitted testimony and documentary evidence at trial concerning weather delays, as well as the contract start and completion dates – the same facts that were central to the determination of whether Clark Homes was

6

entitled to an offset for delay damages. Therefore, Boone cannot show that the admission of duplicative testimony on these issues, offered by Clark Homes, had a substantial effect on the outcome of the case. *See* La. C.E. art. 103(A) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.") *See also Wright*, 924 So.2d at 183 (The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or denial of evidence is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. If the effect on the outcome of the case is not substantial, reversal is not warranted.) Boone failed to satisfy its burden of proving prejudice caused by the trial court's evidentiary ruling. *See Wright*, 924 So.2d at 183 (The party alleging prejudice by the evidentiary ruling of the trial court bears the burden of proof.)[6] We find no error in the admission of the challenged evidence.

Waiver

Boone argues that Clark Homes waived its rights against Boone when Clark Homes made a payment of $3,097.15 to Boone in August 2014, which Boone maintains was the final payment on the phase 1 contract. Although the trial court's written reasons do not expressly address Boone's waiver argument, the trial court implicitly rejected this assertion by awarding Clark Homes $90,000.00 in liquidated damages for 300 delay days.

Boone relies on Article 90 of the general conditions of the contract, which states, in part, "The making and acceptance of the final payment shall constitute a

---

[6] Boone raises new arguments on appeal concerning the propriety of Clark Homes's affirmative defense of compensation, including Boone's assertion that compensation was improper because Clark Homes's claim was not a liquidated debt. *See* La. C.C. art. 1893. Boone did not raise these issues before the trial court; therefore, we decline to consider them on appeal. *See Fontenot v. Louisiana Department of Public Safety & Corrections*, 2021-1213 (La. App. 1st Cir. 4/8/22), 342 So.3d 28, 35 (As a general rule, an appellate court will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal.) We also note that these arguments concern the merits of Clark Homes's claim, not the admissibility of the evidence at issue.

waiver of all claims by the Owner... ."[7] Boone introduced email exchanges from August 2014 between Ferris Engineering & Surveying, LLC, the engineer on the project, Boone, and Clark Homes, which state that the "remaining balance" owed to Boone was $3,097.15. Boone also introduced evidence of the payment made by Clark Homes, which includes a memo stating, "1st Filing completed to date balance."

Although no payments were made by Clark Homes to Boone after August 2014, the trial record reflects that this was not the last payment to be made by Clark Homes to Boone on this phase of the project. Mr. Clark explained that, at the time the check was issued, there were ongoing disputes between Clark Homes and Boone, and he contemplated additional payments may be due to Boone. The language used in the memo, "to date balance," supports this assertion. Additional evidence submitted at trial reflects that, in July 2014, the parties disagreed regarding the number of penalty days to be assessed against Boone for purposes of delay damages and the amount owed to Boone for additional excavation work – the same disputes at issue in this litigation. Therefore, we find no manifest error in the trial court's factual conclusion that Clark Homes did not make a final payment such that it waived its rights pursuant to Article 90.

Additional Contract Days

Ferris determined that work began on the project on December 19, 2012 and was completed on April 14, 2014. Boone argues that the trial court erred by using these dates to calculate the total time it took Boone to complete the work. Again, the trial court's written reasons do not expressly set forth this factual finding, but it is implicit in the trial court's conclusion that Boone took a total of 480 days to complete the project, 300 days over the 180-day period provided in the contract.

---

[7] The general conditions of the contract were incorporated into and made a part of the contract. "Final payment" is not defined in the contract or the general conditions.

The contract states that the contractor, Boone, shall commence work under the contract within seven calendar days of a written notice to proceed. Article 70 of the general conditions of the contract provides that computation of contract time shall commence on the seventh day following the date of the notice to proceed and every calendar day following shall be counted in the contract time. Boone established at trial that it did not receive a written notice to proceed. On February 27, 2013, Ferris asked Boone to provide the date it started work. According to Boone's interoffice emails, Boone started work on January 21, 2013. However, these emails do not reflect that Boone advised Ferris of this purported start date.

To establish the start date, Boone also relied on testimony from Dustin Bowie, Boone's project manager, who simply confirmed Boone's "position" that work began on January 21, 2013 according to the email. Boone offered no other evidence to dispute the December 19, 2012 start date used by Ferris and accepted by the trial court.

Boone also maintains that contract time, and, therefore, delay damages, ended on November 8, 2013. Tracey Boone, managing member of Boone Services, and Mr. Bowie testified that Boone's work was substantially complete by November 8, 2013, meaning that Clark Homes was able to use the project for its intended purpose (a residential subdivision). However, as noted by Clark Homes, the contract provision that provides for liquidated damages discusses work that is "complete," not "substantially complete." Specifically, the contract states that the contractor agrees to pay the owner $300.00 per day, "which amount shall be considered as liquidated damages due the Owner by reason of the Contractor's failure to **complete** the Contract within the specified time." (Emphasis added.) Article 91 of the general

9

conditions of the contract states, "The Contract will be considered complete when all work has been finished..."[8]

Communication between the parties, introduced into evidence at trial, reflects that Boone's work on this phase of the project was not complete on November 8, 2013. Instead, work continued through the spring of 2014. Photographs of the site taken by Mr. Boone in March 2014 support a finding that Boone's work was not complete at that time. Additionally, Mr. Clark testified that Boone's work was not complete on November 8, 2013.

Most significantly, in May 2014, Mr. Boone emailed Ferris and Clark Homes, using December 17, 2012 and April 15, 2014 as the contract start/end dates in his explanation for why Boone should not be assessed with penalty days.[9] Mr. Boone testified that he used these dates, assigned by Ferris, to show that Boone should not be charged liquidated damages, even if the "wrong dates" were used. However, Mr. Boone acknowledged that his email did not state that he disagreed with the dates assigned by Ferris. To the extent the trial court reconciled Mr. Boone's testimony with his email by making a credibility determination, the manifest error standard requires that we give great deference to this determination. *See Hebert v. Rapides Parish Police Jury*, 2006-2001 (La. 4/11/07), 974 So.2d 635, 654, *on rehearing* (1/16/08). Thus, we find the record supports the trial court's conclusion that Boone's work began on December 19, 2012 and ended April 14, 2014, and we find no manifest error in this factual finding. *See Lonesome Development, LLC*, 343 So.3d at 839.

---

[8] Article 91 also states that the contract will be considered complete when final inspection is made by the engineer, the project is accepted in writing by the owner, and the owner is furnished with a Clear Lien and Preferential Certificate. There is no evidence in the record to demonstrate if or when these things occurred, particularly on or before November 8, 2013.

[9] It is unclear why Mr. Boone used December 17, 2012 and April 15, 2014, rather than the dates used by Ferris, December 19, 2012 and April 14, 2014.

Finally, Boone argues that the trial court erred by failing to grant Boone an extension of contract time due to precipitation or wet conditions. This argument has merit. The contract provides, in the **Time Limit** section:

> A request by the Contractor for an extension of the contract time will be considered only if, in support of the request, the Contractor shall allege delay in the performance of the work by either or all of the following causes:
>
>             \* \* \*
>
> (C) Precipitation or wet conditions in excess of normal amounts or times for the location of the project or the time of year. **The Engineer shall make the determination of validity of claims for delays of the type and said decision shall be binding on the Owner and Contractor.** (Emphasis added.)

Boone requested that the contract time be extended by 255 days due to precipitation or wet conditions. Ferris, the engineer, determined that Boone was entitled to 212 adverse weather days. On July 17, 2014, Ferris emailed Boone and Clark Homes with its recommendations for the resolution of the dispute concerning the delay days. Ferris noted that the time of construction went well beyond the 180 days allowed by the contract, explaining, "It is a well-known and documented fact that weather played a critical part of this situation."

A contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. *Waterworks District No. 1 of Desoto Parish v. Louisiana Department of Public Safety and Corrections*, 2016-0744 (La. App. 1st Cir. 2/17/17), 214 So.3d 1, 5, *writ denied,* 2017-0470 (La. 5/12/17), 219 So.3d 1103. In the contract, Clark Homes and Boone gave Ferris the authority to determine the validity of weather delay claims and expressly agreed that the engineer's decision "shall be binding" on both parties. The trial court erred when it failed to enforce this provision of the contract. Thus, we find that, pursuant to Ferris's binding determination, Boone was entitled to extend the contract time by 212 days due to precipitation or wet conditions. We reduce the number of additional contract days (in excess of 180

days) from 300, assigned by the trial court, to 88 to account for the 212 weather days determined by Ferris. We find that Clark Homes is entitled to liquidated damages in the amount of $26,400.00, to be applied to offset the amount owed to Boone pursuant to La. C.C. art. 1893.[10]

### The Ponds[11]

Pursuant to the contract, Boone was to excavate two ponds, a total of 140,000 cubic yards, at a unit price of $2.68. This line item included excavating, spreading, and compacting the dirt on the subdivision lots. The original plans specified that the ponds would be dug to hold five feet of water.

In June 2013, after excavation began, Boone was instructed to dig the ponds to hold at least eight feet of water above debris, stumps, and logs that were to be relocated to the bottom of the ponds. Clinton Kennerly, chief engineer for Ferris involved in this project, testified that putting the stumps into the ponds and excavating to hold eight feet of water changed the scope of work that Boone agreed to undertake pursuant to the original project plans. This additional excavation plan was made during a meeting attended by Ferris, Mr. Boone, and Mr. Clark. Ferris confirmed this decision in an email recapping the parties' meeting, addressed to Mr. Clark and Mr. Boone. Mr. Clark responded, "Agreed." The parties never signed a written contract amendment or change order concerning the additional pond excavation.

The dispute arising out of this additional work on the pond concerns three issues. First, Boone maintains that the parties agreed to a price of $3.32 per cubic yard for the additional dirt excavated pursuant to the June 2013 directive to increase the depth of the pond. Conversely, Clark Homes asserts that no agreement was

---

[10] Eighty-eight days past the 180-day contract time multiplied by $300 per day equals $26,400.00 liquidated damages.

[11] These pond-related issues are raised in Boone's second (price), third (quantity), and fourth (additional contract days) assignments of error.

reached; therefore, the original contract per unit price applied to any additional dirt excavated and moved by Boone. The trial court made the factual determination that Clark Homes never agreed to increase the unit price to $3.32 for dirt excavated in excess of 140,000 cubic yards, the original contract quantity.

Second, the parties dispute the quantity of dirt excavated by Boone in excess of 140,000 cubic yards. Boone maintains that the trial court erred by finding that it only excavated an additional 7,838 cubic yards, rather than 49,624 cubic yards as determined by Ferris.

Finally, Boone contends that the trial court erred by finding that Boone was not entitled to additional contract days and, instead, should have granted Boone 50 contract days to complete the additional excavation work.

Price

Article 84(E) of the general contract conditions states,

> If the unit prices are stated in the Contract Documents..., and if the quantities originally contemplated are so changed in a proposed Change Order that application of the agreed unit prices to the quantities of work proposed will create a hardship on the Owner or the Contractor, the applicable unit prices shall be equitably adjusted to prevent such hardship.

Boone asserts that the change in quantity of dirt to be excavated from the ponds created a hardship, which required an adjustment of the unit price. On September 11, 2013, Boone emailed Ferris, stating that the price to lower the ponds to the new depth was $3.32 per cubic yard. Mr. Clark was included on this email but did not respond. Boone asserts that, through Mr. Clark's silence, Clark Homes agreed to the modification of the price increase.

A contract may be modified by mutual consent. While modification can be presumed by silence, inaction, or implication, one person may not change the terms unilaterally. *Cajun Constructors, Inc. v. Fleming Construction Co.*, 2005-2003 (La. App. 1st Cir. 11/15/06), 951 So.2d 208, 214, *writ denied*, 2007-0420 (La. 4/5/07),

13

954 So.2d 146. Written contracts for construction may be modified by oral contracts and by the conduct of the parties. This is true even when the written contract contains the provision that an owner is liable only if the change orders are in writing. It is a question of fact, therefore, as to whether there were oral agreements that modified the written contract. Further, the party asserting modification of an obligation must prove by a preponderance of the evidence facts or acts giving rise to the modification. La. C.C. art. 1831; *Cajun Constructors*, 951 So.2d at 214.

The trial court made the factual determination that Clark Homes did not agree to increase the price per cubic yard to $3.32. The record supports this finding. Particularly, after Boone advised Ferris and Clark Homes of the proposed new per unit price, Boone repeatedly tried to confirm that Mr. Clark accepted this price, evidencing Boone's understanding that the parties had not reached an agreement on this issue. On September 25, 2013, Boone followed up on its September 11th "Twin Lakes Pond Depth" email, asking, "[H]ow do we go about getting an agreement on paper (or email) from [Mr. Clark] about the price?" On November 22, 2013, Boone emailed Ferris and Mr. Clark concerning the additional pond excavation. Pertinently, Boone explained, "The issue that Boone Services has is that the price to go deeper than plan grade in the ponds has a different unit price associated with it than what is established in the original contract. Can we set up a meeting Monday to sit and talk this through?" There is no evidence a meeting took place.

The next communication on this issue occurred on January 24, 2014, when Mr. Clark stated in an email to Boone and Ferris that he had a "problem with the additional charge for another 50,000 yards of dirt." No evidence was admitted to prove that an oral agreement was reached after Mr. Clark sent this email. Mr. Boone testified that there was no agreement in writing from Clark Homes (Mr. Clark) on the increased price proposed by Boone. To the contrary, the record reflects that Ferris advised Boone on July 21, 2014 that, "In the absence of any evidence to the

14

contrary, I have no alternative except to presume that the contract price is still valid for the remainder of material removed from the ponds."

The trial court's factual conclusion on this issue also required credibility determinations. Mr. Boone testified that Mr. Clark verbally assured him that Boone would be paid the "accelerated costs." Conversely, Mr. Clark testified that he never agreed to the increased unit price of $3.32. According to Mr. Clark, the idea was "bandied back and forth but there was never a meeting of the minds" on this issue. We find no manifest error in the trial court's decision to credit Mr. Clark's testimony.[12] *See Blake v. City of Port Allen*, 2014-0528 (La. App. 1st Cir. 11/20/14), 167 So.3d 781, 790 (Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous.)

### Quantity

Boone relies on surveys and determinations made by Ferris to support its assertion that it moved 49,624 cubic yards in connection with the additional pond excavation. On July 17, 2014, Ferris advised Boone and Clark Homes that it determined that Boone moved a total of 189,624 cubic yards (140,000 cubic yards as originally contemplated by the contract plus an additional 49,624 cubic yards).

In this section of its brief, Boone cites a contract provision, which states, in part:

> The quantities specified in the "Schedule of Items," attached hereto under the date **September 05, 2012**, though determined in advance with as much accuracy as possible, are approximate only and are used herein solely for the purpose of determining the total shown of said Schedule of Items. The amount to be paid the Contractor shall be determined by the actual quantities as determined by the Engineer at the unit prices agreed to in said Schedule of Items. (Emphasis original.)

---

[12] Boone did not ask the trial court or this court to equitably adjust the price if a finding was made that there was no agreement between the parties on the increased price. Because we find no error in the trial court's factual finding that the parties did not agree to increase the unit price, we do not address Boone's argument that the additional excavation created a hardship pursuant to Article 84(E) of the general conditions of the contract.

Boone's reliance on this language is misplaced.[13] This provision concerns the schedule of items, which set forth the original scope of work, and ensures that all parties are aware and agree that adjustments may be made to the original estimates. However, the additional pond excavation was undisputedly a change in the original scope, not merely an adjustment to the original quantity estimated in the schedule of items. *See Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13), 112 So.3d 187, 192 (A contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance.)

Additionally, unlike the contract provision concerning the validity of claims for delays for wet conditions, this contract provision does not state that the engineer's decision is binding on the owner and the contractor. The same is true regarding Article 30 of the general conditions of the contract, which states, in part,

A. The Engineer will be, in the first instance, the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor. The Engineer will, within a reasonable time, render such interpretations as he may deem necessary for the proper execution or progress of the work.

B. Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the work or the interpretation of the Contract Documents shall be referred initially to the Engineer for decision, which decision he will render in writing within a reasonable time.

The evidence also suggests that Ferris understood that its determination was not binding on Boone and Clark Homes. In its July 17, 2014 email, Ferris acknowledged its contractual responsibility to resolve disputes but recognized that an agreement must be reached between the parties. Since neither the parties nor the trial court were bound to accept Ferris's calculations, the trial court made a factual determination concerning the quantity of dirt excavated by Boone in excess of

---

[13] Notably, application of this provision is contrary to Boone's argument that the additional quantity of dirt moved should be paid at an increased price, since this provision states that the contractor will be paid the unit prices stated in the schedule of items.

140,000 cubic yards stated in the schedule of items. This required the trial court to choose to credit one expert over another.

Boone relied on testimony from Mr. Kennerly, who was accepted as an expert in the fields of civil engineering and civil site work. According to Mr. Kennerly, Ferris concluded that Boone moved a total of 189,624 cubic yards during pond excavation using a topographical survey of the fill material (dirt) removed and applying a 30% compaction factor. Mr. Kennerly explained that Ferris compared the elevation before digging and the elevation of the area outside of the ponds after work was complete. This provided an estimate of the amount of dirt removed from the ponds.

On cross examination, Mr. Kennerly acknowledged that the elevations used for the topographical survey may be influenced by various factors, including hauling in additional dirt from areas other than the ponds. Mr. Clark testified that he owned the 60-acre tract of land, which would become Twin Lakes Estates Subdivision, for several years before Boone began work on the project. Prior to Boone's involvement, Mr. Clark hired another company to dig out a silted-up cattle pond and spread the dirt to raise the level of the area.

Clark Homes offered testimony from Charles St. Romaine, who was accepted by the trial court as an expert in civil surveying. By measuring the size or volume of the interior of the ponds, Mr. St. Romaine determined that Boone moved a total of 147,838 cubic yards, with a 10% rate of error. Mr. Kennerly acknowledged that the type of survey performed by Mr. St. Romaine, a hydrographic survey, was a valid method for determining the amount of dirt excavated from the ponds.

Confronted with two expert opinions, two permissible views of the evidence, the trial court chose to credit the testimony, opinions, and calculations provided by Mr. St. Romaine. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Similarly, where

the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. *Adams v. Rhodia, Inc.*, 2007-2110 (La. 5/21/08), 983 So.2d 798, 806-07. Therefore, we find no manifest error in the trial court's factual finding that Boone excavated 7,838 cubic yards of dirt in excess of 140,000 cubic yards.

Days

The final issue, as it relates to the ponds, is whether Boone should have been awarded 50 contract days to complete this work, which would reduce the number of penalty days assessed against it for failing to complete the contract within 180 days.

In Ferris's July 17, 2014 email to Boone and Clark Homes, wherein Ferris acknowledged its responsibility to resolve disputes, Ferris stated that there was an informal extension of time for removal of additional soil from the ponds. Ferris determined that Boone should be granted 25 days to account for this additional work. As with its determination regarding the quantity of dirt actually excavated, Ferris recognized that the parties must reach an agreement on this issue. Its determination was not binding.

Consequently, the trial court was again required to make a factual determination concerning whether Boone was entitled to additional days for pond excavation.[14] We find the record reasonably supports the trial court's finding that no additional days were owed, particularly considering the trial court's conclusion that Boone excavated an additional 7,838 cubic yards of dirt, rather than 49,624 as

---

[14] Article 30(C) states that the engineer will exercise his best efforts to insure faithful performance by both the owner and the contractor and will not show partiality to either. Boone argues that Ferris showed partiality to Clark Homes by finding that Boone was entitled to 25 days, as suggested by Clark Homes, rather than 50 days requested by Boone. Because we find Ferris's decision was not binding on the trial court and is, therefore, immaterial, we do not address this argument.

claimed by Boone. Mr. Bowie testified that 50 additional days for moving an additional 50,000 cubic yards of dirt was reasonable. However, Boone offered no evidence to establish that it actually took 50 days to complete the additional pond work. Mr. Clark testified that he never agreed to an extension of the contract time.

If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, even if it would have weighed the evidence differently. *Adams*, 983 So.2d at 806.

### *Seed and Fertilize Line Item*[15]

The contract schedule of items includes "seed and fertilize R/W 15' servitude" for a total price of $3,486.00. Boone first included this work in its request for payment no. 11 for the period ending January 25, 2014. Boone requested a total payment of $164,609.84, which included charges for the additional pond excavation. Since the parties continued to dispute the amount owed for the additional work, Ferris recommended that Clark Homes pay for current billing items only in the amount of $30,149.84, which included the seed and fertilize work. Clark Homes paid $23,779.64 to Boone in connection with request for payment no. 11.

Mr. Boone testified at trial that Clark Homes did not provide an explanation for why it paid $6,370.20 less than Ferris recommended. However, Mr. Boone also testified that Clark Homes did not pay the seed and fertilize line item and explained that Clark Homes disputed this charge, because Clark Homes maintained that it performed the work, not Boone. Mr. Boone explained that work of this nature, *i.e.*, seeding and fertilizing, was often done multiple times throughout a project. "It's just a constant maintenance item, seed and fertilizing, as you disturb grass you've got to replant, replant, replant."

---

[15] This issue is raised in Boone's sixth assignment of error.

19

Boone again included "seed and fertilize" as a line item on its request for payment no. 12, dated July 7, 2014, listed as an amount incurred and included in its total due to date. On August 6, 2014, Ferris emailed Clark Homes with a summation of the payment discrepancies with Boone, particularly concerning Boone's request for payment no. 12. Ferris noted that "seed and fertilize" was included as a line item charge on request for payment no. 12, but that Clark Homes deducted this item from Boone's work, because Clark Homes maintained that it performed the work, not Boone. This resulted in a difference of $3,486.00.

In an email on August 15, 2014 concerning the payment discrepancies, Mr. Boone stated that Mr. Clark agreed that Boone would be paid for the "seeding item [because] we dressed the pond banks up several times for him." Mr. Clark was shown this email at trial and identified his initials written on Mr. Boone's August 15, 2014 email. Mr. Clark was asked, "And isn't it correct that when you executed this and signed your initials you were agreeing that Boone would be paid for the seeding and fertilizing?" He responded, "Yes." Clark Homes offered no evidence to establish that Boone did not perform the work and was not owed the full contract amount for this line item.

Neither the judgment nor the trial court's written reasons address Boone's demand for payment for the seed and fertilize line item. Instead, the judgment dismisses Boone's remaining claims with prejudice.[16] Generally, silence in a

---

[16] We note that the judgment lacks clarity concerning which claims by Boone were dismissed. The judgment awards Boone $21,005.84 against Clark Homes, finds that Clark Homes is entitled to an offset in the amount of $90,000.00, then overrules Boone's evidentiary objection. Following this, the judgment states, "**IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED** that all claims of the Plaintiff, Boone Services, [LLC], be dismissed with prejudice, at Plaintiff's costs." (Emphasis original.) It is evident from the record that this paragraph was intended to dismiss the *remaining* claims asserted by Boone, which were not otherwise addressed in the preceding paragraphs set forth in the judgment. However, we decline to amend this portion of the judgment, under the authority provided by La. C.C.P. art. 2164, because, for reasons discussed in this opinion, we reverse the dismissal of Boone's claims for payment for the seed and fertilize line item, for interest on late payments made on requests for payment nos. 1 through 6, and for interest on all sums found to be due, and render judgment in favor of Boone on these claims. We affirm the dismissal of Boone's claim for interest in connection with requests for payment nos. 7, 10, 11, and 12.

20

judgment of the trial court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. *See Unisys Corporation v. Louisiana Office of Motor Vehicles Through Hodges,* 2018-0556 (La. App. 1st .Cir. 12/28/18), 270 So.3d 637, 654. On appeal, Boone argues that the trial court erred by failing to award payment of $3,486.00 for the seed and fertilize line item. Clark Homes did not address this assignment of error in its appellee brief.

After reviewing the evidence, which establishes that Boone performed the work and Mr. Clark acknowledged that Boone was to be paid for this line item, we find a reasonable factual basis does not exist for the trial court's finding that Boone is not entitled to payment for the seed and fertilize line item and the trial court's finding to the contrary is manifestly erroneous. *See Stobart v. State through Department of Transportation & Development.,* 617 So.2d 880, 882 (La. 1993). Therefore, we find that Boone is entitled to an award of $3,486.00, plus 12% interest from the date payment was due.[17] *See* La. C.C. art. 2000. The evidence reflects that Ferris approved this portion of Boone's request for payment no. 11 on February 24, 2014, making payment due 10 days later, on March 6, 2014. *See* Article 80 of the general conditions of the contract, set forth below.

***Interest on Late Payments and Sums Awarded***[18]

Article 80 of the general conditions of the contract states,

A. Should the Owner fail to pay an approved Request for Payment within ten (10) days from the date of approval by the Engineer or should he fail to inform the Engineer and the Contractor in writing of his reasons for withholding payment, the Owner shall pay the Contractor interest on the amount of the request for payment at the rate of twelve (12%) percent per annum until payment is made.

---

[17] Boone seeks an award of interest on the sums owed to it "being sought through this lawsuit" in assignment of error no. 7.

[18] This issue is raised in Boone's seventh assignment of error. Although Boone's petition does not clearly set forth a claim for interest on late payments, the parties expanded the pleadings pursuant to La. C.C.P. art. 1154, which pertinently states, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading."

Boone asserts that Clark Homes failed to pay requests for payment nos. 1 through 7 and nos. 10 and 11 within 10 days from the date of approval by Ferris and also failed to inform Ferris and Boone in writing of the reasons for withholding full payment on requests for payment nos. 10, 11, and 12. Thus, Boone seeks an award of 12% interest on the late payments from the date Ferris approved the requests until each was paid.

Again, neither the judgment nor the trial court's written reasons address Boone's demand for contractual interest. Therefore, this silence is deemed a denial of the claim. *See Unisys Corporation*, 270 So.3d at 654.

Interest on Requests for Payment Nos. 1 through 7

Clark Homes maintains that Boone failed to prove when payment was made on requests for payment nos. 1 through 7 and, therefore, is not entitled to interest. However, Boone introduced Exhibit 4, which includes a chart or summation of all billings made and specifies the date each request for payment was submitted, the date each was approved by Ferris, and the date payment was received. Clark Homes offered no evidence to contradict this.

Pertinently, Exhibit 4 sets forth the following:

Request for payment no. 1 in the amount of $83,869.31 was approved by Ferris on February 27, 2013, and submitted by Ferris to Clark Homes the same day. Boone received payment 12 days later, on March 11, 2013. Thus, payment was 2 days late. Boone established that it is entitled to an award of interest in the amount of $27.59 per day, for a total of $55.18, due to Clark Homes's failure to pay request for payment no. 1 within the contractually agreed upon time.[19]

_____

[19] The contract provides a 12% per annum interest rate, which calculates to a rate of .000329 per day (.12/365 = .000329). To determine the interest due on each request for payment, the daily interest rate was multiplied by the total amount owed, which calculated the amount of interest owed per day. This figure was multiplied by the number of days the payment was late.

Request for payment no. 2 in the amount of $254,583.55 was approved by Ferris on March 26, 2013, and submitted by Ferris to Clark Homes the same day. Boone received payment 20 days later, on April 15, 2013. Thus, payment was 10 days late. Boone established that it is entitled to an award of interest in the amount of $83.76 per day, for a total of $837.60, due to Clark Homes's failure to pay request for payment no. 2 within the contractually agreed upon time.

Request for payment no. 3 in the amount of $302,313.05 was approved by Ferris on May 2, 2013, and was submitted by Ferris to Clark Homes the same day. Boone received payment 15 days later, on May 17, 2013. Thus, payment was 5 days late. Boone established that it is entitled to an award of interest in the amount of $99.46 per day, for a total of $497.30, due to Clark Homes's failure to pay request for payment no. 3 within the contractually agreed upon time.

Request for payment no. 4 in the amount of $350,380.55 was approved by Ferris on June 3, 2013, and was submitted by Ferris to Clark Homes the same day. Boone received payment 17 days later, on June 20, 2013. Thus, payment was 7 days late. Boone established that it is entitled to an award of interest in the amount of $115.28 per day, for a total of $806.96, due to Clark Homes's failure to pay request for payment no. 4 within the contractually agreed upon time.

Request for payment no. 5 in the amount of $87,314.71 was approved by Ferris on June 26, 2013, and was submitted by Ferris to Clark Homes the same day. Boone received payment 19 days later, on July 15, 2013. Thus, payment was 9 days late. Boone established that it is entitled to an award of interest in the amount of $28.73 per day, for a total of $258.57, due to Clark Homes's failure to pay request for payment no. 5 within the contractually agreed upon time.

Request for payment no. 6 in the amount of $55,281.59 was approved by Ferris on July 29, 2013, and was submitted by Ferris to Clark Homes the same day. Boone received payment 18 days later, on August 16, 2013. Thus, payment was 8

23

days late. Boone established that it is entitled to an award of interest in the amount of $18.19 per day, for a total of $145.52, due to Clark Homes's failure to pay request for payment no. 6 within the contractually agreed upon time.

Request for payment no. 7 in the amount of $32,328.93 was approved by Ferris in the amount of $30,654.13 on September 30, 2013, and was submitted by Ferris to Clark Homes the same day.[20] Boone received payment 10 days later, on October 10, 2013. Thus, payment was not late, and no interest is owed.

Louisiana Code of Civil Procedure art. 1921 provides that "[t]he court shall award interest in the judgment as prayed for or as provided by law." Since the word "shall" is mandatory, courts lack discretion to deny interest if interest is prayed for or provided for by law. *Unisys Corporation*, 270 So.3d at 654. Pursuant to La. C.C. art. 2000, when the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by La. R.S. 9:3500. Therefore, the trial court erred by failing to award interest to Boone on all delinquent payments. We find that Boone is entitled to a total of $2,601.13 in interest for late payments made on requests for payment nos. 1 through 6.

Interest on Requests for Payment No. 10

Boone's initial request for payment no. 10 was approved by Ferris on December 19, 2013 and included a request for payment of retainage in the amount of $108,568.34. Boone revised request for payment no. 10 on December 25, 2013 to request a retainage payment of $72,423.96. There is no evidence that Ferris specifically approved the revised request. Additionally, it appears that Clark Homes was first notified of the revised amount requested on January 23, 2014. Boone was paid $50,000 on January 24, 2014 as a partial retainage payment. There is no

---

[20] Ferris did not approve $1,674.80 of this request, which is not at issue.

evidence of when or if Boone received payment of the remainder of the retainage. For these reasons, Boone failed to establish that Article 80 applies to revised request for payment no. 10.

Interest on Requests for Payment No. 11

We have already determined that Boone is entitled to interest on the seed and fertilize line item on request for payment no. 11. As noted, this request included costs for the additional excavation, which Ferris did not approve for payment. Additionally, by February 24, 2014, when Ferris approved a portion of this request, Mr. Clark had provided written notice of his disagreement concerning the additional excavation work. We find Article 80 does not apply.

Interest on Requests for Payment No. 12

Finally, as Clark Homes points out, Ferris never approved Boone's request for payment no. 12. Article 80 does not apply to this request for payment.

Interest on Sums Awarded

Boone also argues that it is entitled to an award of interest on any amount awarded in this litigation. The trial court awarded $21,005.84 to Boone for 7,838 additional cubic yards of dirt excavated from the ponds (at $2.68 per cubic yard), but did not award interest on this sum. This was legal error. *See* La. C.C.P. 1921; La. C.C. art. 2000; *Unisys Corporation*, 270 So.3d at 654.

During trial, Mr. Boone testified that Boone sought 12% interest on the full amount of its demand from July 17, 2014, the date Ferris emailed the parties with a proposed resolution concerning delay days and the additional pond excavation. Therefore, this is the date Boone maintains that payment became due. We find that Boone is entitled to interest on the award of $21,005.84 from July 17, 2014. We further find that Article 80, which provides 12% per annum interest, does not apply to this award, which falls outside the scope of its provisions. Therefore, the applicable interest rate is fixed by La. R.S. 9:3500. *See* La. C.C. art. 2000.

25

## DECREE

We amend the trial court's July 18, 2022 judgment to identify Boone Services, LLC, rather than Boone Services, Inc., as the proper party plaintiff.

The trial court did not abuse its discretion by admitting evidence offered by Clark Homes, Inc. to support its affirmative defense of liquidated damages.

We find no manifest error in the trial court's factual findings concerning the price per cubic yard, quantity of dirt, and contract days for the additional pond excavation performed by Boone Services, LLC. Therefore, we affirm the portion of the trial court's July 18, 2022 judgment, which enters judgment in favor of Boone Services, LLC and against Clark Homes, Inc. in the amount of $21,005.84. However, we find the trial court erred by failing to award interest to Boone Services, LLC on this sum. Therefore, we amend this portion of the trial court's July 18, 2022 judgment and render judgment favor of Boone Services, LLC and against Clark Homes, Inc. to award legal interest to Boone Services, LLC on the sum of $21,005.84 from July 17, 2014 at the rate fixed by La. R.S. 9:3500.

The trial court manifestly erred by determining that Boone was not entitled to payment for the seed and fertilize line item. We reverse the portion of the trial court's July 18, 2022 judgment that denied relief and dismissed this claim by Boone Services, LLC, with prejudice. We render judgment in favor of Boone Services, LLC and against Clark Homes, Inc. in the amount of $3,486.00, plus 12% interest from March 6, 2014, the date payment was due.

The trial court erred by failing to award interest to Boone Services, LLC on late payments made on requests for payments nos. 1 through 6, as provided by the contract. Therefore, we reverse this portion of the trial court's July 18, 2022 judgment and render judgment favor of Boone Services, LLC and against Clark Homes, Inc. to award interest to Boone Services, LLC in the amount of $2,601.10.

We affirm the trial court's dismissal of Boone's claim for interest related to requests for payment nos. 7, 10, 11, and 12.

We find the trial court erred by awarding 300 additional contract days to Clark Homes, Inc. and by awarding $90,000.00 in liquidated damages as compensation pursuant to La. C.C. art. 1893 in favor of Clark Homes, Inc. We find that Boone Services, LLC exceeded the contract time by 88 days. Therefore, we amend this portion of the trial court's July 18, 2022 judgment and render judgment in favor of Clark Homes, Inc. and against Boone Services, LLC in the amount of $26,400.00 as compensation pursuant to La. C.C.P. art. 1893.

Costs of this appeal shall be divided equally between the parties.

**JUDGMENT AMENDED. AS AMENDED, JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND RENDERED.**